1

2

3

4

5

6

7

8                    **UNITED STATES DISTRICT COURT**

9                    **CENTRAL DISTRICT OF CALIFORNIA**

10

11  ADELAIDE M. V.R.,                    )   NO. CV 17-7060-E
                                         )
12                Plaintiff,             )
                                         )
13       v.                              )   **MEMORANDUM OPINION**
                                         )
14  NANCY A. BERRYHILL, Deputy           )   **AND ORDER OF REMAND**
    Commissioner for Operations,         )
15  Performing duties and functions not  )
    reserved to the Commissioner of      )
16  Social Security,                     )
                                         )
17                Defendant.             )
    _____)

18

19       Pursuant to sentence four of 42 U.S.C. section 405(g), IT IS

20  HEREBY ORDERED that Plaintiff's and Defendant's motions for summary

21  judgment are denied, and this matter is remanded for further

22  administrative action consistent with this Opinion.

23

24                         **PROCEEDINGS**

25

26       Plaintiff filed a complaint on September 25, 2017, seeking review

27  of the Commissioner's denial of benefits.  The parties consented to

28  proceed before a United States Magistrate Judge on November 3, 2017.

Plaintiff filed a motion for summary judgment on March 1, 2018.  By

stipulation and order, a "Supplemental Certified Administrative

Record" was filed on June 14, 2018.  Defendant filed a motion for

summary judgment on June 22, 2018.  The Court has taken the motions

under submission without oral argument.  See L.R. 7-15; "Order," filed

September 28, 2017.

**BACKGROUND**

Plaintiff asserts disability since February 28, 2014, based on,

inter alia, myalgia and myositis (not otherwise specified) and

idiopathic peripheral neuropathy (not otherwise specified), with

chronic back pain, knee pain, and hand numbness/weakness/pain of

allegedly disabling severity (Administrative Record ("A.R.") 37, 41,

44, 50-51, 144, 148).  Plaintiff testified that she has pain in her

knees which makes it difficult to put weight on her knees, limits her

to walking no more than 10 minutes at a time, has required the use of

a cane for ambulation outside the house since 2014, and requires the

use of a wheelchair for any occasion requiring walking more than 10

minutes (A.R. 44-46).  The vocational expert testified that, if a

person were required to use a cane for ambulation, it would limit the

person to sedentary work (A.R. 58-59).  If Plaintiff were limited to

sedentary work, she would be presumptively disabled under the Grids

(A.R. 60).

State agency physician Dr. Joan Bradus reviewed portions of the

medical record and, on July 24, 2014, opined that Plaintiff has

"disorders of the muscle, ligament and fascia," peripheral neuropathy,

and "DDD" (disorders of the back (discogenic and degenerative)) (A.R. 64-67). Dr. Bradus opined that Plaintiff's statements concerning "the intensity, persistence, and functionally limiting effects of her symptoms were substantiated by the objective medical evidence alone" (A.R. 66). Yet, Dr. Bradus also opined that Plaintiff could lift and/or carry 20 pounds occasionally and 10 pounds frequently, <u>stand and/or walk six hours</u> in an 8-hour workday and sit six hours in an 8-hour workday, with limited left and right overhead reaching, handling, and feeling (<u>i.e.</u>, limited to frequent but not constant upper extremity overhead use, and frequent handling and feeling due to parasthesias) (A.R. 66-67).

The Administrative Law Judge ("ALJ") examined the record and heard testimony from Plaintiff and a vocational expert (A.R. 23-31, 35-74, 128-338). The ALJ found that Plaintiff has the following "severe" impairments: "disorder of muscle, ligament, fascia," peripheral neuropathy, bilateral carpal tunnel syndrome and obesity (A.R. 25). The ALJ also found, however, that Plaintiff retains the residual functional capacity to perform light work limited to work requiring: (1) climbing stairs only occasionally; (2) no climbing of ladders, scaffolds or ropes; (3) balancing, stooping, kneeling, crouching and crawling only occasionally; and (4) using the upper extremities for gross and fine manipulation only occasionally (A.R. 26, 29 (giving "great weight" to Dr. Bradus's residual functional capacity determination)). The ALJ concluded that, with such capacity, Plaintiff could perform work as a "laminating machine operator" or

///

///

3

"bakery worker" and therefore is not disabled (A.R. 30 (adopting vocational expert testimony at A.R. 57-58)[1]).[2]

On August 18, 2017, the Appeals Council denied review (A.R. 1-4). Plaintiff had submitted to the Appeals Council additional evidence post-dating the ALJ's adverse decision. See A.R. 2; see also A.R. 339-44 (evidence submitted to the Appeals Council dated March 28, 2016 and July 1, 2016, filed with this Court as the "Supplemental Certified Administrative Record"). The Appeals Council stated that the newly submitted evidence did not relate to the disability period at issue, which ended on March 22, 2016. See id.

### STANDARD OF REVIEW

Under 42 U.S.C. section 405(g), this Court reviews the Administration's decision to determine if: (1) the Administration's findings are supported by substantial evidence; and (2) the Administration used correct legal standards. See Carmickle v. Commissioner, 533 F.3d 1155, 1159 (9th Cir. 2008); Hoopai v. Astrue, 499 F.3d 1071, 1074 (9th Cir. 2007); see also Brewes v. Commissioner, 682 F.3d 1157, 1161 (9th Cir. 2012). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401

---

[1]    The vocational expert testified that, if a person were required to use a cane for ambulation, the person could not perform the jobs identified (A.R. 58-59).

[2]    In reaching his decision, the ALJ deemed Plaintiff's statements and testimony concerning the severity of Plaintiff's alleged symptoms not entirely credible (A.R. 27-29).

1  (1971) (citation and quotations omitted); see also Widmark v.

2  Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006).

3

4       If the evidence can support either outcome, the court may

5       not substitute its judgment for that of the ALJ.  But the

6       Commissioner's decision cannot be affirmed simply by

7       isolating a specific quantum of supporting evidence.

8       Rather, a court must consider the record as a whole,

9       weighing both evidence that supports and evidence that

10      detracts from the [administrative] conclusion.

11

12  Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citations and

13  quotations omitted).

14

15                          **DISCUSSION**

16

17  **I.   The ALJ Mischaracterized the Record, and Substantial Evidence**

18       **Does Not Support the ALJ's Residual Functional Capacity**

19       **Assessment.**

20

21       In determining Plaintiff's residual functional capacity, the ALJ

22  gave "great weight" to Dr. Bradus's opinion as: (1) coming from "an

23  accepted medical source who examined the claimant directly"; and (2)

24  "consistent with the bulk of the evidence in the record" (A.R. 29

25  (emphasis added)).  The ALJ thereby erred.

26

27       The ALJ mischaracterized Dr. Bradus's opinion as supposedly

28  coming from an examining source.  Dr. Bradus never examined Plaintiff.

Rather, Dr. Bradus merely reviewed certain medical records.  See A.R. 64 (list of medical evidence Dr. Bradus reviewed); see also A.R. 70 ("Notice of Disapproved Claims" dated July 30, 2014, stating "Doctors and other trained staffed looked at this case and made this decision.").  An ALJ's material mischaracterization of the record can warrant remand.  See, e.g., Regennitter v. Commissioner of Social Sec. Admin., 166 F.3d 1294, 1297 (9th Cir. 1999).  As explained below, the ALJ's mischaracterization of Dr. Bradus's opinion is potentially material.

There is no medical opinion in the record supporting the ALJ's conclusion that Dr. Bradus's non-examining opinion is "consistent with the bulk of the evidence in the record" (A.R. 29).  The ALJ's lay discernment in this regard cannot constitute substantial evidence. See Balsamo v. Chater, 142 F.3d 75, 81 (2d Cir. 1998) (an "ALJ cannot arbitrarily substitute his own judgment for competent medical opinion") (internal quotation marks and citation omitted); Rohan v. Chater, 98 F.3d 966, 970 (7th Cir. 1996) ("ALJs must not succumb to the temptation to play doctor and make their own independent medical findings"); Day v. Weinberger, 522 F.2d 1154, 1156 (9th Cir. 1975) (an ALJ is forbidden from making his or her own medical assessment beyond that demonstrated by the record).

The record contains no opinion from a treating or examining physician supporting the ALJ's conclusions regarding Plaintiff's physical limitations/abilities.  Contrary to Dr. Bradus's opinion that Plaintiff can perform light work, one of Plaintiff's treating physicians, Dr. Shirish Patel, provided a letter dated March 28, 2016

1 – only six days after the ALJ's adverse decision – stating that

2 Plaintiff had been "diagnosed with cervicalgia, lumbar disc

3 degeneration, knee arthritis and diabetes," and "requires the use of a

4 cane to ambulate on a daily basis" (A.R. 344).[3]  Dr. Bradus's non-

5 examining opinion, which appears to contradict Dr. Patel's treating

6 opinion that Plaintiff requires a cane for ambulation, cannot

7 constitute substantial evidence to support the ALJ's decision.  "The

8 opinion of a nonexamining physician cannot by itself constitute

9 substantial evidence that justifies the rejection of the opinion of

10 either an examining physician or a treating physician."  Lester v.

11 Chater, 81 F.3d 821, 831 (9th Cir. 1995) (emphasis in original); see

12 also Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007) ("When [a

13 nontreating] physician relies on the same clinical findings as a

14 treating physician, but differs only in his or her conclusions, the

15 conclusions of the [nontreating] physician are not 'substantial

16 evidence.'"); Pitzer v. Sullivan, 908 F.2d 502, 506 n.4 (9th Cir.

17 1990) ("The nonexamining physicians' conclusion, with nothing more,

18 does not constitute substantial evidence, particularly in view of the

19 conflicting observations, opinions, and conclusions of an examining

20 physician"); compare Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th

21 Cir. 2001 (opinion of non-examining medical source "may constitute

22 ///

23

24    [3]    Dr. Patel's letter is now a part of the Administrative
Record.  See "Supplemental Certified Administrative Record,"
25 filed June 14, 2018.  Although this letter was not before the
ALJ, the Appeals Council's denial of review "means that the
26 [ALJ's] decision is the final decision of the Commissioner. . ."
(A.R. 1).  In this circumstance, oddly enough, the Court must
27 review the validity of the ALJ's decision in light of evidence
that was never before the ALJ.  See Warren v. Astrue, 859 F.
28 Supp. 2d 1107, 1115 n.10 (C.D. Cal. 2012).

substantial evidence when it is consistent with other independent

evidence in the record").


　　Furthermore, Dr. Bradus rendered an opinion regarding Plaintiff's

physical residual functional capacity as July of 2014, on the basis of

incomplete records that did not include any treatment records

reflecting that Plaintiff used a cane or would require a cane for

ambulation. See A.R. 64 (summary of medical records Dr. Bradus

reviewed).[4] Plaintiff had complained of knee pain in the records Dr.

Bradus reviewed (A.R. 178, 186, 190, 192-93). However, as of the time

of Dr. Bradus's review, no testing had been done on Plaintiff's knees,

and she had not been assessed with any specific knee problems.

See A.R. 178-207.


　　Plaintiff testified that she has knee pain, making it difficult

for her to bear her own weight, and that she has required the use of a

cane for ambulation since some time in 2014 (A.R. 44-45). Plaintiff's

medical records post-dating Dr. Bradus's review reflect continued

complaints of knee pain (A.R. 218, 250, 252, 254, 261, 337). On

November 20, 2014, Plaintiff presented for a rheumatology consultation

complaining of, inter alia, knee pain and stiffness which sometimes

causes trouble getting out of a chair for which Plaintiff occasionally

wore a patella-stabilizing knee brace and used a "SPC" (single point

cane) for stability (A.R. 254). On examination, Plaintiff reportedly

had generalized tenderness in the medial and lateral joint lines of

her knees (A.R. 256). She was assessed with knee pain, back pain,

---

[4]    It appears that Dr. Bradus reviewed only Exhibits 1F
and 2F (i.e., A.R. 178-207). See A.R. 64.

muscle spasm in the back, myalgia and skin sensation disturbance, and
further testing was ordered (A.R. 258).

    On December 18, 2014, Plaintiff presented for treatment,
complaining of balance problems and dizziness after her knee had
buckled, causing her to fall in the shower and hit her head (A.R.
252).  Plaintiff was assessed with a head injury and dizziness and was
referred for a CT scan of her brain (A.R. 253; see also A.R. 292
("unremarkable" brain CT scan report)).  At an examination on January
9, 2015, Plaintiff reportedly ambulated slowly due to knee pain (A.R.
250).

    On June 29, 2015, Plaintiff reported that she had fallen down
steps the day before and may have injured her right foot (A.R. 233).
Plaintiff complained of pain radiating up her lower leg (A.R. 233).
Plaintiff reportedly was walking with a cane (A.R. 233).  Plaintiff
was given a short leg splint and referred to podiatry (A.R. 234-35).
Plaintiff followed up with a podiatry appointment on July 1, 2015
(A.R. 231).  Plaintiff was assessed with a foot sprain and edema and
was prescribed a CAM boot and crutches for two weeks (A.R. 232).
Plaintiff returned on August 5, 2015, reporting that she could not use
crutches due to back problems, and requesting a wheelchair (A.R. 226).
A wheelchair was ordered for Plaintiff's foot sprain, and she was
referred for physical therapy (A.R. 227).

    On September 1, 2015, Plaintiff reportedly had tenderness to
palpation of the cervical and lumbar paraspinal areas, antalgic gait
but no specific abnormalities, and "poor effort" on neurological exam

(A.R. 221). On September 30, 2015, Plaintiff complained of left knee pain and burning, following a "pop" when she stood up, rendering her unable to bear weight on her left leg (A.R. 218). Plaintiff reportedly arrived for her appointment in a wheelchair (A.R. 218). On examination, Plaintiff's left knee was tender, medially, with no swelling or bruising, her patella was "non-tender," her range of motion was intact with no crepitus, and she was stable to varus/valgus stress (A.R. 219). A left knee x-ray reportedly showed arthritic changes and no fracture (A.R. 219; see also A.R. 335-36 (January, 2016 MRI of Plaintiff's left knee showing small joint effusion and mild chondromalacia of the patella)). Plaintiff was ordered to follow up with an orthopedist for a possible ligament tear (A.R. 219). When Plaintiff returned on October 31, 2015, complaining of a possible allergic reaction, she reportedly was using a wheelchair (A.R. 216).

On October 16, 2015, Dr. Patel requested approval for a power wheelchair, which was denied (A.R. 328). A request for elevating leg rests for use with Plaintiff's regular wheelchair was approved, as was a request for a shower chair (A.R. 329-30).

Meanwhile, Plaintiff had a pain management consultation with Dr. Andrew Messiha on October 15, 2015 (A.R. 324-27). Plaintiff then was using a cane (A.R. 326). On examination, Dr. Messiha reported positive Spurling's sign, tenderness to palpation of the facet joints, tenderness to palpation of the cervical paravertebral muscles, tenderness to palpation of the midline of the midthoracic region as well as the thoracic paravertebral muscles bilaterally, tenderness to palpation over the facet joints, and an antalgic gait ambulating with

the cane (A.R. 325-26).  Dr. Messiha opined that Plaintiff's symptoms were a combination of multiple degenerative changes, bilateral carpal tunnel syndrome and cervical radiculitis (A.R. 326).  Dr. Messiha noted that Plaintiff's MRI scans correlated with some of her physical findings, and her physical examination correlated with a positive Spurling's sign (A.R. 326; see also A.R. 280-81, 284-85, 287-88, 322-23, 331-36 (MRI reports)).  According to Dr. Messiha, Plaintiff's thoracic pain radiating to her chest likely resulted from degenerative changes and thoracic spinal stenosis noted on the MRI scan (A.R. 326).  Dr. Messiha reportedly could not determine if Plaintiff's syrinx at the T1-T2 level might be contributing to her symptoms, and he deferred any interventional therapy until Plaintiff could be evaluated by a neurosurgeon (A.R. 326).  Dr. Messiha ordered Plaintiff to follow up in one month (A.R. 326).  When Plaintiff returned to Dr. Messiha on July 1, 2016, she reportedly was ambulating with a cane (A.R. 342).

Plaintiff presented for a physical therapy appointment on February 5, 2016, complaining of bilateral foot and ankle pain, left greater than right, lumbar spine pain, hand weakness, hip pain and knee pain (A.R. 337).  Plaintiff then was ambulating with a "SPC" single point cane with decreased velocity and stride/step length, described as "independent however painful" (A.R. 337).  Plaintiff reportedly had stiffness, pain, numbness and tingling, and radiation of symptoms to her feet, aggravated by walking, standing or climbing stairs, and relieved by sitting/rest and Gabapentin (A.R. 337).  Plaintiff was assessed with bilateral feet and ankle pain with mobility and muscle power deficits, and numbness and tingling bilaterally that could be due to diabetic neuropathy (A.R. 338).

Thus, the current record, much of which Dr. Bradus never reviewed (and some of which the ALJ never reviewed), suggests that Plaintiff may well require the use of a cane.  On the current record, substantial evidence does not support the ALJ's residual functional capacity determination.

**II.  The Court is Unable to Deem the Errors Harmless; Remand for Further Administrative Proceedings is Appropriate.**

The Court is unable to conclude that the errors are harmless. "[A]n ALJ's error is harmless where it is inconsequential to the ultimate nondisability determination." Molina v. Astrue, 674 F.3d 1104, 1115 (9th Cir. 2012) (citations and quotations omitted); see Treichler v. Commissioner, 775 F.3d 1090, 1105 (9th Cir. 2014) ("Where, as in this case, an ALJ makes a legal error, but the record is uncertain and ambiguous, the proper approach is to remand the case to the agency"); cf. McLeod v. Astrue, 640 F.3d 881, 887 (9th Cir. 2011) (error not harmless where "the reviewing court can determine from the 'circumstances of the case' that further administrative review is needed to determine whether there was prejudice from the error").

Remand is appropriate because the circumstances of this case suggest that further development of the record and further administrative review could remedy the errors. McLeod v. Astrue, 640 F.3d at 888; see also INS v. Ventura, 537 U.S. 12, 16 (2002) (upon reversal of an administrative determination, the proper course is remand for additional agency investigation or explanation, except in

12

1  rare circumstances); Dominguez v. Colvin, 808 F.3d 403, 407 (9th Cir.

2  2015) ("Unless the district court concludes that further

3  administrative proceedings would serve no useful purpose, it may not

4  remand with a direction to provide benefits"); Treichler v.

5  Commissioner, 775 F.3d at 1101 n.5 (remand for further administrative

6  proceedings is the proper remedy "in all but the rarest cases");

7  Garrison v. Colvin, 759 F.3d 995, 1020 (9th Cir. 2014) (court will

8  credit-as-true medical opinion evidence only where, inter alia, "the

9  record has been fully developed and further administrative proceedings

10  would serve no useful purpose"); Harman v. Apfel, 211 F.3d 1172, 1180-

11  81 (9th Cir.), cert. denied, 531 U.S. 1038 (2000) (remand for further

12  proceedings rather than for the immediate payment of benefits is

13  appropriate where there are "sufficient unanswered questions in the

14  record").  There remain significant unanswered questions in the

15  present record.  Cf. Marsh v. Colvin, 792 F.3d 1170, 1173 (9th Cir.

16  2015) (remanding for further administrative proceedings to allow the

17  ALJ to "comment on" the treating physician's opinion).  Moreover, it

18  is not clear that the ALJ would be required to find Plaintiff disabled

19  for the entire claimed period of disability even if Dr. Patel's

20  opinion were fully credited.  See Luna v. Astrue, 623 F.3d 1032, 1035

21  (9th Cir. 2010).

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

**CONCLUSION**

For all of the foregoing reasons,[5] Plaintiff's and Defendant's motions for summary judgment are denied and this matter is remanded for further administrative action consistent with this Opinion.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: June 29, 2018

_____/s/_____
CHARLES F. EICK
UNITED STATES MAGISTRATE JUDGE

---

[5]    The Court has not reached any other issue raised by Plaintiff except insofar as to determine that reversal with a directive for the immediate payment of benefits would not be appropriate at this time.